IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

LUCIA FANCHER, individually and
as personal representaive of the
ESTATE OF NICK DOMINGUEZ,

       Plaintiff,

v.                                                                                                      No. Civ. 11-118 LH/LAM

JOHNNY BARRIENTOS, in his individual capacity,
SHERIFF TODD GARRISON, in his individual and
official capacity, and the COUNTY OF DOÑA ANA,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

      On November 23, 2011, Defendants Johnny Barrientos, Sheriff Todd Garrison, and the County of Doña Ana ("Defendants") filed a Motion in Limine to Exclude the Testimony of Lou Reiter (ECF No. 49). The Court, having considered the motion, briefs, pleadings, evidence, relevant law, and otherwise being fully advised, concludes that a pre-trial *Daubert*[1] hearing is unnecessary as to the issues ruled upon herein and that the motion should be granted in part and denied in part as explained below.

**I.**     **INTRODUCTION**

      This case arises from a March 29, 2010 incident that should have involved a routine investigation of a beer theft but quickly escalated into a deadly shooting. Deputy Johnny Barrientos shot Mr. Dominguez multiple times after Mr. Dominguez attempted to disarm Deputy Barrientos, resulting in the discharge of the firearm, and after Mr. Dominguez ran to and attempted

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

to start driving Deputy Barrientos's squad car where two unsecured, loaded long guns were located. A more detailed account of the incident is set forth in this Court's Memorandum Opinion and Order (ECF No. 68) filed on June 13, 2012. Plaintiff filed suit against Deputy Barrientos, Sheriff Todd Garrison, and Doña Ana County for excessive force and failure to train under 42 U.S.C. § 1983 and for various state law claims.

Plaintiff seeks to introduce the testimony of Lou Reiter, a retired police officer and expert in the areas of law enforcement, private security, and police procedures. Defendants do not challenge Mr. Reiter's qualifications; instead, they contend that his opinions are unreliable under *Daubert* and inadmissible under Federal Rule of Evidence 702. Specifically, Defendants give three grounds for excluding Mr. Reiter's testimony: (1) his expert testimony regarding alleged standard operating procedure ("SOP") violations is irrelevant to Plaintiff's § 1983 claims; (2) his analysis is unreliable because he wrongfully concludes that Defendant Barrientos acted recklessly despite cases that indicate such actions amount to no more than negligence; and (3) he relies on flawed facts and does not apply controlling case law to the undisputed facts when opining that Defendant Barrientos did not objectively fear for his safety or the community's when firing at Nick Dominguez, a dangerous, fleeing felon.

Plaintiff objects to the exclusion of Mr. Reiter's testimony, arguing that his testimony is relevant and reliable. Plaintiff seeks the introduction of the following topics upon which Mr. Reiter gave expert opinions: (1) firearm retention and weapon safety; (2) maintaining spatial distance; (3) high-risk vehicle approach; (4) Defendant Barrientos's use of force in firing the first shot; (5) the unreasonableness of Defendant Barrientos's testimony regarding his conduct after firing the last shot; and (6) use-of-force policy. *See* Pl.'s Resp. (ECF No. 58) at 2-6.

After briefing on the motion was complete, the Court entered a Memorandum Opinion and

Order (ECF No. 68) granting in part and denying in part Defendants' Motion for Summary Judgment. The Court granted Defendant Barrientos's request for qualified immunity and summary judgment on Plaintiff's excessive force, assault, and battery claims to the extent the claims arose from his actions in firing the initial shot at Nick Dominguez, but denied Defendant Barrientos's request for summary judgment to the extent the claims arose from his actions in firing the additional shots at Mr. Dominguez. The Court dismissed Plaintiff's negligence claims against Defendant Barrientos and Doña Ana County but denied Defendant Garrison's and Defendant Doña Ana County's requests for summary judgment on Plaintiff's § 1983 claims against them.

## II.   STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determinate a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. *See* Fed. R. Evid. 702, 2000 Amendments.

*Daubert* challenges, like other preliminary questions of admissibility, are governed by Federal Rule of Evidence 104. *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002). To determine whether an expert opinion is admissible, the district court performs the following

two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Under *Daubert*, courts measure reliability of scientific evidence by considering the following non-exhaustive factors: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the general acceptance of the methodology in the relevant scientific community. *See Kumho Tire*, 526 U.S. at 149-50; *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* Court emphasized that the focus must be solely on the principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595. *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141.

Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (court's admission of expert testimony is reviewed for abuse of discretion). The court's discretion is equally broad in both deciding how to assess an expert's reliability, including what procedures to use in making that assessment, and in making the ultimate determination of reliability. *Id.* at 1208-09. A district court need not hold a *Daubert* hearing to perform its gatekeeping function, so long as the court has sufficient evidence to perform the task of ensuring that an expert's testimony is both relevant and reliable. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir.

2000). The district court, however, has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

## III. ANALYSIS

### A. The following opinions by Mr. Reiter will be excluded as irrelevant and unhelpful to the jury following this Court's qualified immunity ruling

This Court ruled in its Memorandum Opinion and Order (ECF No. 68) that Officer Barrientos's firing of the initial shot did not violate Mr. Dominguez's constitutional rights and that he was entitled to qualified immunity. In so holding, the Court specifically ruled that Deputy Barrientos's leaving his loaded long guns in the unlocked squad car was not reckless or deliberate conduct that unreasonably brought about the need to use such force. This Court also concluded that it was not reckless for Deputy Barrientos to attempt to stop Mr. Dominguez from gaining control of the squad car. Consequently, the following opinions by Mr. Reiter that Plaintiff seeks to admit at trial are no longer relevant, helpful, and will be excluded: (i) Mr. Reiter's opinions on firearm retention and weapon safety issues; (ii) Mr. Reiter's testimony that Deputy Barrientos acted contrary to proper police training when he drew his gun and approached Mr. Dominguez and his friends; (iii) Mr. Reiter's opinion that, as a matter of police practice, Deputy Barrientos should never have approached the vehicle when Mr. Dominguez entered it or put his head or arm through the window of the police vehicle while Mr. Dominguez was behind the wheel; and (iv) Mr. Reiter's testimony that Deputy Barrientos violated generally accepted police practices on the use of deadly force when firing the initial shot. This Court in its Memorandum Opinion and Order specifically disagreed with Mr. Reiter's assessment on these issues, concluding that Deputy Barrientos's actions leading up to and in firing the initial shot were constitutional and did not violate clearly established law. Consequently, the Court excludes all opinion testimony by Mr.

Reiter on the actions of Deputy Barrientos leading up to and including firing the initial shot.

### B. Mr. Reiter's opinion on proper police procedures and practices for securing the firearm after the shooting

Plaintiff seeks to admit testimony by Mr. Reiter that established police practices would have led a reasonable officer to secure the firearm in the police vehicle after having used deadly force, in part, because of the presence of the firearm near the suspect. Plaintiff argues that this evidence is relevant to impeach Deputy Barrientos's testimony in which he says he did not go down to where the squad car came to a rest. Plaintiff's theory, based in part on crime scene evidence, is that Deputy Barrientos followed the vehicle to where it stopped and then fired the last two shots into Mr. Dominguez's head. Defendant objects to this testimony, arguing that it is impermissible for an expert to render an opinion whether a witness is lying or telling the truth.

"The credibility of witnesses is generally not an appropriate subject for expert testimony," because "it usurps a critical function of the jury and because it is not helpful to the jury, which is capable of making its own determination regarding credibility." *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997) (holding that district court did not abuse its discretion in excluding polygraph evidence that would have bolstered defendant's credibility). The Federal Rules of Evidence, however, "permit expert testimony to be offered in appropriate circumstances to establish a witness's truthful or untruthful character," but the testimony must be carefully limited to matters that are within the scope of the expert's specialized knowledge and expertise. *United States v. Shay*, 57 F.3d 126, 131-32 (1st Cir. 1995) (holding that court erred in excluding testimony of psychiatrist that defendant suffered from mental disorder that causes its victims to make false and grandiose statements without regard to the consequences).

The Court agrees with Defendant that Mr. Reiter cannot render an ultimate opinion as to

whether Deputy Barrientos was lying when he stated that he did not go down to where the squad car came to a rest, as that testimony is outside the scope of Mr. Reiter's expertise.   However, Mr. Reiter can testify that an officer following standard police procedures would generally secure a firearm near a suspect.   Such testimony would be helpful to the jury in making its own credibility analysis as to whether Deputy Barrientos is believable when he stated that he did not follow the vehicle to where it stopped before shooting the final two shots.   This testimony is relevant and not unfairly prejudicial.  The Court will therefore not exclude testimony by Mr. Reiter as to the established police practices in securing a firearm after having used deadly force.

The Court nevertheless will not let Mr. Reiter testify that it was "unreasonable" for Deputy Barrientos to not secure Mr. Dominguez or the firearm after having fired multiple shots.   *See* Dep. of Lou Reiter (ECF No. 50-1) at 67-68 (rendering opinion that "I think that was unreasonable, [Barrientos] not securing, if he believed the necessity to use deadly force was that he didn't want Dominguez to have access to this unsecured AR-15 in the car, yes.   That was unreasonable in not securing him.").   The issue that is relevant at trial is whether Deputy Barrientos acted objectively reasonably when he fired the additional shots at Mr. Dominguez, not whether he acted unreasonably in failing to secure the firearm or handcuff Mr. Dominguez after the fact. Discussing whether Deputy Barrientos acted "reasonably" in failing to secure the firearm afterwards confuses the issues and is not helpful to the jury in determining whether Deputy Barrientos's testimony is credible.

### C.    Mr. Reiter's Opinions on the Adequacy of Doña Ana County's Use of Force Policy

The parties dispute what Use-of-Force Policy was in place at the time of the incident. Plaintiff seeks to admit Mr. Reiter's testimony that Doña Ana County's written policy and

procedures concerning the use of force were deficient. Defendant argues that his testimony is not based on the policy that was actually in place, and thus is not relevant or reliable.

As explained in this Court's Memorandum Opinion and Order, Defendant has not established that the policy Mr. Reiter relied upon was not the policy in place at the time of the incident. *See* Mem. Op. and Order (ECF No. 68) at 11 & n.8. Conversely, nor has Plaintiff established that the policy Mr. Reiter relied upon was the policy in place at the time. *See id.* Consequently, at this time the record is unclear and it remains a question of fact as to which policy was in place. Moreover, the Court has before it only a portion of Mr. Reiter's report and does not have the section discussing agency issues of policy and supervision. *See* Pl.'s Ex. 3 (ECF No. 58-3). The Court is therefore unable to assess at this juncture whether Mr. Reiter's expert testimony on generally recognized proper use-of-force policies is relevant, reliable, and admissible with respect to the issue of whether Doña Ana County's policy is deficient, and whether the County failed to properly train or supervise its officers with respect to the use of deadly force. The Court will therefore reserve ruling on the admissibility of Mr. Reiter's testimony regarding recognized standards for use-of-force policy.

The Court nevertheless notes that any such testimony by Mr. Reiter will be restricted to the use-of-force policies related to firing additional shots at Mr. Dominguez. As aforementioned, the Court has already ruled that Deputy Barrientos's actions in firing the initial shot did not violate Mr. Dominguez's constitutional rights and that Deputy Barrientos is entitled to qualified immunity for his actions up to and including the initial shot. Use-of-force policies relevant only to the issue of the constitutionality of the first shot, such as the failure to give warnings or to secure the firearms in the police vehicle, therefore did not cause Plaintiff constitutional harm and are no longer relevant to the issues before the jury. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

658, 694 (1978) (holding that municipalities are subject to Section 1983 liability only when their official policies or customs cause a plaintiff's injuries); *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (explaining that, to succeed in § 1983 suit against defendant-supervisor, a plaintiff must show that the defendant's policy caused the complained of constitutional harm); *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (ruling that, to establish municipal liability under a failure-to-train theory, a plaintiff must prove, among other things, a direct causal link between the inadequate training and unconstitutional conduct). Only use-of-force policies, or lack thereof, that could have caused the constitutional harm still at issue in the case – the allegedly unreasonable firing of multiple shots at Mr. Dominguez – will be relevant at trial.

Given the significantly changed posture of this case following the Court's ruling on qualified immunity, the Court recognizes that the parties may have additional issues they need to raise to resolve *Daubert* and other evidentiary issues before trial. The Court will issue a trial notice at a later date. In the Court's standard trial notice, the Court will set deadlines closer to trial for the filing of motions in limine and *Daubert* motions, so the parties will have an opportunity pre-trial to raise any remaining issues that this opinion does not definitively address.

**IT IS THEREFORE ORDERED** that Defendants' Motion in Limine to Exclude the Testimony of Lou Reiter (**ECF No. 49**) is **GRANTED in part and DENIED in part** as follows:

1. Defendants' request to exclude testimony by Mr. Reiter as to the established police practices in securing a firearm after having used deadly force for purposes of impeachment is **DENIED**;

2. The Court **RESERVES RULING** on Defendants' request to exclude Mr. Reiter's expert testimony on generally recognized proper use-of-force policies related to Plaintiff's claims

9

against Doña Ana County and Sheriff Garrison until the record can be more fully developed; and

3. In all other respects, Defendants' motion in limine to exclude the testimony of Mr. Reiter is **GRANTED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**