## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

LUCIA FANCHER, individually and
as personal representative of the
ESTATE OF NICK DOMINGUEZ,

      Plaintiff,

v.                                                            No. Civ. 11-118 LH/LAM

JOHNNY BARRIENTOS, in his individual capacity,
SHERIFF TODD GARRISON, in his individual and
official capacity, and the COUNTY OF DOÑA ANA,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On October 10, 2013, Plaintiff Lucia Fancher, individually and as the personal representative of the estate of Nick Dominguez, ("Plaintiff") filed a Motion to Partially Exclude the Testimony of Vincent Di Maio (ECF No. 102) ("Motion to Exclude") on grounds of judicial estoppel and the lack of reliable methodology under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In a Memorandum Opinion and Order (ECF No. 115) filed December 3, 2013, this Court rejected Plaintiff's arguments that Dr. Vincent Di Maio's opinion on the sequence of gunshots should be excluded based on untimeliness and judicial estoppel theories. Mem. Op. and Order 1, ECF No. 115. The Court, however, determined that a pre-trial *Daubert* hearing was necessary as to the issue of the reliability of Dr. Di Maio's testimony regarding the sequence of gunshots, and thus, reserved ruling on that issue. The Court conducted a *Daubert* hearing on January 7, 2014, on the issue. The Court, having considered the motion, briefs, pleadings, relevant law, and evidence presented at the hearing, concludes that Plaintiff's request

to partially exclude the testimony of Dr. Di Maio regarding the sequence of gunshots will be denied.

## I.      STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Fed. R. Evid. 702.  It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*  Rule 702 incorporates the principles of *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable.  *See* Fed. R. Evid. 702, 2000 Amendments.

*Daubert* challenges, like other preliminary questions of admissibility, are governed by Federal Rule of Evidence 104.  *United States v. Turner*, 285 F.3d 909, 912-13 (10th Cir. 2002). To determine whether an expert opinion is admissible, the district court performs the following two-step analysis:  (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable and helpful under the principles set forth in *Daubert*.  *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  Under *Daubert*, courts measure reliability of scientific evidence by considering the following non-exhaustive factors:  (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the

known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the general acceptance of the methodology in the relevant scientific community.  *See Kumho Tire*, 526 U.S. at 149-50; *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).  The *Daubert* Court emphasized that the focus must be solely on the principles and methodology, not on the conclusions they generate.  *Daubert*, 509 U.S. at 595.  *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge.  *Kumho Tire*, 526 U.S. at 141.

Trial courts have broad discretion in determining the admissibility of expert testimony. *See United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000) (court's admission of expert testimony is reviewed for abuse of discretion).  The court's discretion is equally broad in both deciding how to assess an expert's reliability, including what procedures to use in making that assessment, and in making the ultimate determination of reliability.  *Id.* at 1208-09.  The district court, however, has no discretion as to the actual performance of its gate-keeping function. *Turner*, 285 F.3d at 913.

## II.    ANALYSIS

After considering the evidence and arguments presented at the *Daubert* hearing, the Court finds that Dr. Di Maio is qualified as an expert by knowledge, skill, experience, training, and education to render an opinion on the sequence of gunshots in this case.  Additionally, the Court finds that Dr. Di Maio's opinion that Wound C was caused by the first gunshot fired was formed by reliable scientific evidence that would be helpful to the jury.

Dr. Di Maio testified that the generally accepted diagnostic method in the field of forensic pathology is to examine the circumstances up to and including the death (the "history"),

the physical condition of the decedent, and testing of the instruments involved in causing the injuries.  To gain information for a history in the case of a victim's death, a forensic pathologist may rely on witness statements, among other things.  In the case of death, the physical evaluation is in the form of an autopsy.  In the case of a death resulting from a firearm, Dr. Di Maio testified that the generally accepted methodology used in the field may include examining the range of tattooing on the victim's body, examining the firearms used, conducting a trajectory analysis, and determining whether the wounds are consistent with eye witness accounts.  Dr. Di Maio stated that a forensic pathologist may also rely on certain undisputed assumptions.

Dr. Di Maio testified that, in this case, to determine the sequence of shots, he considered the powder tattooing on the victim's body; the trajectory of the bullets entering the victim's body; that the decedent was seated in the vehicle; the undisputed fact that the vehicle moved in reverse as the shots were fired; and the slide in the New Mexico State Police report and power point presentation that depicted the arc of shell casings from the firearm.  Dr. Di Maio testified that powder tattooing was the most important factor upon which he relied to determine both range of fire and the sequence of the shots.

The Court finds that Dr. Di Maio's analysis was based on medical and forensic methodology that is generally accepted in the scientific community.  Moreover, his analysis of the powder tattooing on the victim's body and trajectory of the bullets are based on techniques that can be and have been tested in the scientific community and that also have been subject to peer review and publication.  Dr. Di Maio wrote a book entitled <u>Gunshot Wounds</u> which analyzed firearms, ballistic, and forensic techniques.

Although Dr. Di Maio acknowledged that the powder tattooing evidence by itself established only the range of fire, Dr. Di Maio explained that the powder tattooing evidence

combined with the trajectory analysis and positions of the decedent and vehicle led him to form an opinion that, in all medical probability, Wound C resulted from the first shot fired.  Dr. Di Maio testified that he is not able to render an opinion on the sequence of shots fired in all cases. Dr. Di Maio testified that only Wound C showed evidence of intermediate to close range firing and that Wound C was caused by a trajectory of the bullet showing that the shooter was more in front of the victim, with the bullet going in a steep downward trajectory, in a left to right direction.  According to Dr. Di Maio, the evidence of powder tattooing on the victim's under arms indicated that the victim's arms were on the steering wheel at the time Deputy Barrientos fired the shot that caused Wound C.  Dr. Di Maio testified that this evidence, combined with the trajectory of the other bullets, the absence of powder tattooing for any other gunshot wounds, the position of the shell casings, and the backwards movement of the car, further support his opinion that, in all medical probability, the first shot fired was the shot that caused Wound C.  The Court finds that Dr. Di Maio's opinion is reliable, based on scientific evidence, and helpful to the trier of fact.

The Court recognizes that Dr. Di Maio stated in his report that, in addition to the scientific evidence aforementioned, he also relied in part on "the account of the shooting."  *See* Pl.'s Mot. to Exclude, Ex. E, Doc. 102-2 at 6 of 7.  Dr. Di Maio, however, testified that it is generally accepted in the field of forensic pathology to rely, in part, on the history of the incident, including witness statements, and to make certain assumptions based on undisputed facts, such as the decedent's position being seated in the vehicle.  Dr. Di Maio nevertheless emphasized that he has relied principally on the objective evidence in rendering his opinions and in determining whether the wounds sustained are consistent with the witness accounts of the incident.  Dr. Di Maio testified that the accounts of the law enforcement officers were consistent

with his conclusions, but not a basis for his opinion.

Plaintiff argues that Dr. Di Maio's opinion is not reliable because it requires an assumption that Deputy Barrientos was stationary and not moving alongside the vehicle. The Court disagrees with Plaintiff's assessment that Dr. Di Maio's sequence-of-shots opinion is predicated on the deputy being in a stationary position. Questions regarding whether other theories of positioning of the victim and deputy could be consistent with the evidence and affect Dr. Di Maio's opinion regarding the sequence of shots fired are best left for cross-examination at trial.

In sum, the Court finds that Dr. Di Maio's opinion is based on scientific, technical, and specialized knowledge that will help the jury understand the evidence; his testimony is based upon sufficient facts and data and is the product of reliable principles and methods; and he has reliably applied the principles and methods to the facts of the case. The Court will therefore allow Dr. Di Maio to testify concerning his opinion that, in all medical probability, Wound C was the first shot fired. The weight to be given Dr. Di Maio's opinion will be up to the jury at trial.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Partially Exclude the Testimony of Vincent Di Maio (**ECF No. 102**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**